UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCOTT KELLER, an individual,

       Plaintiff,

                                Case No.

v.

LISA DEFALCO, an individual, and
TPG TELEMANAGEMENT, INC.,
a Pennsylvania corporation.
             Defendants.
_____/

## COMPLAINT

Plaintiff, Scott Keller ("Mr. Keller"), files this Complaint against Defendants,

Lisa DeFalco ("DeFalco") and TPG Telemanagement, Inc. ("TPG") (collectively,

"Defendants"). In support thereof, Mr. Keller states as follows:

## THE PARTIES

1.    Mr. Keller is a resident of Fulton County, Georgia. Mr. Keller is the

President and minority shareholder of TPG. Mr. Keller owns ~30% of TPG's

outstanding shares.

2.    Defendant DeFalco is a resident of Bradenton, Florida. She is the Chief

Executive Officer and majority shareholder of TPG. DeFalco owns approximately

~69% of TPG's outstanding shares.

3.    Defendant TPG is a Pennsylvania corporation with its principal place

of business in Bradenton, Florida. TPG conducts business nationwide and internationally.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 and 1367.

5.      The amount in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs. Complete diversity of citizenship exists amongst Mr. Keller and the Defendants.

6.      This Court has personal jurisdiction over each Defendant pursuant to § 48.193(1)(a)(1) and/or 48.193(1)(a)(2) of Florida's long-arm statute. DeFalco resides in Bradenton, Florida and is a Florida citizen. TPG maintains a corporate office, which is managed by DeFalco, in Bradenton, Florida and conducts significant business in Florida.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b).

## FACTUAL BACKGROUND

8.      TPG is a closely held corporation, formed on October 7, 1996. As of the date of filing this Complaint, TPG has two shareholders: DeFalco, who owns approximately ~69% of the outstanding shares, and Mr. Keller, who owns approximately ~30% of the outstanding shares.

9.     TPG has approximately 170 employees.

10.    TPG provides a variety of operational, technical and consultation services in the area of customer experience, sales, retention, compliance, and branding to clients nationwide and internationally.

11.    Through the combined efforts of Mr. Keller and DeFalco, TPG has significantly grown its revenue and footprint in its industry.

12.    Mr. Keller initiated his employment with TPG on or around August 1, 2007 as Chief Marketing Officer. Because of Mr. Keller's high performance, he was elevated to President of TPG on or around 2010.

**<u>Mr. Keller's Agreements with TPG</u>**

13.    In late 2012, DeFalco and Mr. Keller elected to update and further formalize their relationships with TPG through various agreements, including an Employment Agreement, Subscription Agreement, Non-Qualified Stock Option Agreement, and Stockholder's Agreement.

   A.    *<u>Mr. Keller's Employment Agreement</u>*

14.    TPG and Mr. Keller executed the Employment Agreement on or around January 1, 2013. A copy of the Employment Agreement is attached as **Exhibit "A".**

15.    Section 7(b) of the Employment Agreement provides that it is governed by the law of Mr. Keller's home, which is located in Georgia.

16.    Section 4 of the Employment Agreement delineates different forms of compensation depending on whether Mr. Keller is terminated "with cause," or "without cause."

17.    Section 4(d) defines the term "Cause" as the following: "(i) breach of any material term contained in paragraphs 3 or 5 of this Agreement; (ii) conviction of a felony other than for Driving While Intoxicated; or (iii) failure to seek, and be successfully treated for, substance abuse and/or addiction."

B.    *Mr. Keller's Subscription Agreement*

18.    On or around January 1, 2013, TPG and Mr. Keller entered into the Subscription Agreement, which provided Mr. Keller with an irrevocable subscription for 30 shares of TPG's common stock at a purchase price of $281,424.00 and options to acquire TPG's common stock pursuant to a separate Non-Qualified Stock Option Agreement. A copy of the Subscription Agreement is attached as **Exhibit "B"**.

C.    *Mr. Keller's Non-Qualified Stock Option Agreement*

19.    On January 1, 2013, TPG and Mr. Keller also entered into a Non-Qualified Stock Option Agreement (the "Option Agreement") that provided Mr. Keller the option to purchase 181 shares of TPG's common stock. A copy of the Option Agreement is attached as **Exhibit "C"**.

20.    The Option Agreement provided for options to purchase stock in TPG vesting as follows:

|  | Number of Shares | Exercisable After | Expiration Date |
|---|---|---|---|
| Block 1 | 19 | 10/1/2013 | 1/1/2024 |
| Block 2 | 18 | 10/1/2014 | 1/1/2024 |
| Block 3 | 18 | 10/1/2015 | 1/1/2024 |
| Block 4 | 18 | 10/1/2016 | 1/1/2024 |
| Block 5 | 18 | 10/1/2017 | 1/1/2024 |
| Block 6 | 18 | 10/1/2018 | 1/1/2024 |
| Block 7 | 18 | 10/1/2019 | 1/1/2024 |
| Block 8 | 18 | 10/1/2020 | 1/1/2024 |
| Block 9 | 18 | 10/1/2021 | 1/1/2024 |
| Block 10 | 18 | 10/1/2022 | 1/1/2024 |

21.     Mr. Keller exercised the options for and purchased shares in Blocks 1 – 7.

D.      *The Stockholders' Agreement*

22.     On or around January 1 2013, TPG, DeFalco, and Mr. Keller executed the Stockholders' Agreement. A copy of the Stockholders' Agreement is attached as **Exhibit "D"**.

23.     The Stockholders' Agreement governs the rights of TPG's two stockholders (DeFalco and Mr. Keller) and provides certain restrictions on the transferability of TPG's stock. The Stockholders' Agreement is governed by Pennsylvania law.

24.     If Mr. Keller's employment with TPG is terminated, Section 4 requires him to offer his shares to TPG or DeFalco for repurchase.

25.     Section 5 of the Stockholders' Agreement proscribes a different valuation method depending on whether Mr. Keller's employment is terminated "for cause" or "without cause." If Mr. Keller's employment is terminated "for cause," the applicable valuation method reduces the value of his shares for purchase.

## Mr. Keller's Romantic Relationship with DeFalco

26.     On or around 2009, DeFalco and Mr. Keller engaged in a consensual extramarital sexual relationship (the "Relationship").

27.     At all times during the Relationship, DeFalco was Mr. Keller's direct superior.

28.     The Relationship put significant strain on Mr. Keller's marriage.

29.     DeFalco suggested to Mr. Keller that he "marry me" to allow the Relationship to progress further.

30.     In or around 2018, the relationship ended and, thereafter, Mr. Keller hoped and believed that he and DeFalco would continue their efforts to maximize TPG's growth.

31.     From the moment of Mr. Keller's termination of the Relationship forward, the circumstances between DeFalco and Mr. Keller changed.

32.     Mr. Keller devoted considerable time to his marriage, which is healthy. DeFalco and her ex-husband did not stay married and completed an acrimonious divorce on or around 2013.

## DeFalco's Breach of the Law, TPG's Bylaws and Fiduciary Duty to Mr. Keller

33.     On or around March 2020, DeFalco began making material corporate decisions without Mr. Keller's knowledge or input, and began taking numerous corporate actions in a unilateral fashion (the "Unilateral Actions").

34.     Many of the Unilateral Actions were reckless, and harmed TPG, as well as Mr. Keller as a TPG shareholder.

35.     Because these Unilateral Actions and decisions harmed TPG and Mr. Keller as a shareholder, Mr. Keller reviewed TPG's Bylaws (the "Bylaws") and discovered that DeFalco was routinely and blatantly violating the Bylaws.

36.     Specifically, TPG's Bylaws establish that TPG's officers "shall have such authority and perform such duties in the management of the corporation ***as may be provided by or pursuant to resolution or orders of the board of directors*** or . . . as may be determined by or pursuant to these bylaws." (emphasis added). A copy of TPG's Bylaws is attached as **Exhibit "E"**.

37.     Accordingly, the Bylaws prohibit DeFalco from taking certain corporate actions unless they are approved by resolutions or orders from the board of directors (the "Board").[1]

---

[1] Specific provisions of the Bylaws additionally expressly describe the duties of the Officers and affirm the necessity for Board approval. Sections 5.07 (the Chairman "shall perform such other duties as may from time to time be requested by the board of directors"); 5.08 (the President "shall sign, execute, and acknowledge, in the name of the corporation, deeds, mortgages, contracts or other instruments authorized by the board of directors . . ."); 5.09 (the Secretary "shall perform all

38.    Section 16(b) of the Stockholders' Agreement provides further affirmation that Officer and corporate action requires Board approval, stating that "[a]ny Director may recommend any matter or corporate action to be voted upon by the Board of Directors."

### A.    *DeFalco Converts Corporate Cash for Her Personal Benefit.*

39.    On December 28, 2020, DeFalco unilaterally transferred $500,000.00 of TPG's corporate cash to her personal bank account without board knowledge, consideration or approval.

40.    Section 5.11 of the Bylaws directly addresses officer salary adjustments, stating that "[t]he salaries of the officers elected by the board of directors shall be fixed from time to time by the board of directors or by such officer as may be designated by resolution of the board."   Accordingly, officer salary adjustments must be approved by the Board and are not unilaterally permitted.

41.    In addition to DeFalco's obligations to abide by the Bylaws, DeFalco owed a fiduciary duty of good faith and due care to TPG and its shareholders and owed a specific fiduciary duty to minority shareholders. These fiduciary duties prohibited DeFalco from appropriating the assets and property of the corporation for herself, and to the exclusion of minority shareholders like Mr. Keller.

---

duties incident to the office of secretary, and such other duties as may from time to time be assigned by the board of directors or the president."); 5.10 (the Treasurer "shall discharge such other duties as may from time to time be assigned by the board of directors or the president.").

B.   *DeFalco Fails to Obtain Board Approval for Significant Business Action*

42.   In derogation of the Bylaws, DeFalco also unilaterally engaged in significant corporate activity without consideration or approval by the Board or other Officers.

43.   Specifically DeFalco performed the following actions without consideration or approval by the Board or other Officers:

(1) placing TPG in significant debt, including unilaterally approving over 1.5 million in Paycheck Protection Program ("PPP") loans, and other additional loan debt secured in 2020 through First National Bank of Omaha and personally underwritten by DeFalco and Mr. Keller;

(2) recruiting and hiring new c-level employees without consideration or approval by the Board or other Officers;

(3) making risky investments in third-party relationships and contracts that require long-term commitments of millions of dollars;

(4) re-organizing TPG's Executive Operating Committee multiple times in 2020;

(5) opening a new office in Huntsville, Alabama, which will incur considerable capital expenditures while TPG has material office overhead and capacity in three cities;

(6) recruiting and establishing an Advisory Board to TPG;

(7) engaging in other acts of self-dealing for personal gain.

44.     DeFalco's actions have harmed Mr. Keller, as a TPG shareholder, by exposing TPG to unnecessary risk and utilizing significant corporate cash assets for her personal gain.

C.     *Exercise of Equity Options*

45.     On or around the 2nd of January of each year, Mr. Keller's option to purchase his agreed allotment of shares (the "2021 Vested Shares") in TPG vested.

46.     Mr. Keller's option to purchase additional shares in TPG vests on an annual basis. Mr. Keller has exercised this option to purchase additional shares every year that he has had the option to except for this year, 2021.

47.     Due to DeFalco's illegal and harming unilateral actions to TPG and Mr. Keller, Mr. Keller did not exercise his right to purchase the 2021 Vested Shares.

48.     Mr. Keller's decision not to purchase the 2021 Vested Shares provided notice to DeFalco that Mr. Keller was aware of her recent illegal and harming activity.

D.     *TPG, through DeFalco, Hires Sara Teske.*

49.     On or around September 2020, DeFalco hired Sara Teske ("Ms. Teske") as a business development and project management resource for the Federal marketplace. Ms. Teske's annual salary was $180,000.

50.   DeFalco did not consult with Mr. Keller regarding this hire before offering Ms. Teske the job.

51.   Mr. Keller was informed that Ms. Teske had issues involving mental and physical disabilities based upon her time with the Marine Corp. In fact, after Ms. Teske was hired, Mr. Keller learned that she failed her background drug test.

52.   On or around December 2020, Mr. Keller was informed that Ms. Teske had performance issues at work.

53.   On or around January 2021, Mr. Keller was informed that DeFalco terminated Ms. Teske from employment at TPG. At that time, DeFalco shared that she had terminated Teske to the TPG Executive Operating Committee, because Ms. Teske "cannot keep my pace."

54.   Mr. Keller was concerned about Ms. Teske's termination, and the circumstances surrounding this termination.

55.   Although Mr. Keller wanted to investigate Ms. Teske's termination further, and to discuss it with DeFalco, he was kept out of the process entirely.

G.   *Administrative Leave & the Investigation*.

56.   On Friday, January 29th, 2021, DeFalco sent Mr. Keller an unusual text message stating they needed to talk.

57.   Mr. Keller and DeFalco spoke that evening.

58.     At that time, Mr. Keller realized he had been locked out of all corporate email, banking and business communications platforms.

59.     In the meeting, DeFalco informed Mr. Keller that TPG was served with a demand letter (the "Demand Letter") from an attorney representing Ms. Teske. The Demand Letter alleged that TPG, at DeFalco's sole direction, wrongly terminated Ms. Teske. The Demand Letter also falsely alleged that Mr. Keller had made sexual advances against Ms. Teske (the "Alleged Accusation").

60.     DeFalco informed Mr. Keller that he would be put on paid administrative leave while an outside law firm investigated the Allegation. At first, assuming this investigation was proceeding in good faith, Mr. Keller complied with DeFalco's request.

61.     On February 2, 2021, Mr. Keller had a virtual meeting with TPG's independent lawyer who was conducting the investigation.   The independent lawyer's name was Margaret Hershiser.

62.     As an officer and shareholder in the company, Mr. Keller requested the Demand Letter from DeFalco. DeFalco refused to give Mr. Keller a copy of the Demand Letter.

63.     After days of silence, Mr. Keller's lawyer, Jake Evans, contacted Ms. Hershiser and requested a status of the investigation and the Demand Letter. The only response was that the investigation was proceeding as quickly as possible, and

Ms. Hershiser again refused to provide a copy of the Demand Letter, even for attorneys' eyes only.

     *H.*     *Mr. Keller's Termination.*

64.     In response to Mr. Keller's objection to DeFalco's various breaches and acts of corporate malfeasance, DeFalco orchestrated a plot to terminate Mr. Keller by using the Alleged Accusation as a pretext to terminate his employment with TPG and try to wrongly force Mr. Keller to sell his shares at a deflated value.

65.     DeFalco realized that if she terminated Mr. Keller's employment without cause, Mr. Keller would be entitled to additional compensation under the Employment Agreement and his shares in TPG would retain their fair value. Instead, DeFalco manufactured a false basis to terminate Mr. Keller's employment, for cause, in an improper effort to reduce the repurchase value of Mr. Keller's shares in TPG and diminish any compensation owed to him.

66.     DeFalco weaponized the Demand Letter and placed Mr. Keller on "administrative leave" while TPG conducted a sham investigation.

67.     Despite Mr. Keller's numerous requests, DeFalco refused to provide Mr. Keller a copy of the Demand Letter.

68.     Although TPG allegedly concluded its investigation and did not indicate the discovery of any wrongdoing by Mr. Keller, it refused to reinstate Mr. Keller as President.

69.     On or around February 8, 2021, DeFalco and Mr. Keller had a telephonic meeting in which DeFalco mentioned that the two should split as partners and they can do this split without it being publicized in a negative light. During this meeting, for the first time, DeFalco suggested that Mr. Keller had an "addiction," but provided no supporting evidence or basis for that assertion.

70.     DeFalco and Mr. Keller planned a follow-up telephone call for Feb 9, 2021 at 2:30 pm. Before this meeting, Mr. Keller circulated a "2:30 p.m. call agenda" that set forth many of the issues that needed to be discussed. A copy of this February 9th, 2021 email is attached as **Exhibit "F."**

71.     In response, DeFalco did not take the call and texted Mr. Keller that she would send his termination letter, suggesting that it had already been drafted and that DeFalco and Mr. Keller's previous discussions were a pretext.

72.     TPG, through DeFalco, sent Mr. Keller a formal Letter of Termination on February 9, 2021.  A copy of the Letter of Termination is attached as **Exhibit "G."**

73.     The Letter of Termination purports to terminate Mr. Keller's employment for cause "on the basis of [his] failure to seek treatment, and to be successfully treated, for [his] addictive sexual disorder."

74.     The Letter of Termination fails to provide any evidence supporting these allegations.

75.     Neither DeFalco nor TPG have ever claimed Mr. Keller suffered from an "addictive sexual disorder" before suddenly terminating his employment.

76.     Neither DeFalco nor TPG ever requested Mr. Keller seek treatment for an "addictive sexual disorder" before suddenly terminating his employment.

77.     Mr. Keller has never been diagnosed by a medical professional with any form of substance abuse or addiction, and there has been no allegation that he has either.

78.     Mr. Keller has not made a demand on TPG's Board as such demand is futile. DeFalco is the majority shareholder and has assumed full control over all aspects of TPG, and has materially oppressed and harmed Mr. Keller as minority shareholder.

## COUNT I - DECLARATORY ACTION (DEFALCO & TPG) – *Federal Law*

79.     Mr. Keller reincorporates and realleges paragraphs 1 - 78 as if fully set forth herein.

80.     Mr. Keller brings this claim pursuant to 28 U.S.C. § 2201(a), or alternatively O.C.G.A. § 9-4-2, to declare his legal rights and other legal relations surrounding questions of actual controversy between Mr. Keller, DeFalco, and TPG.

81.     Mr. Keller hereby seek a declaratory judgment to establish that:

(1) the facts existing at the time of Mr. Keller's termination do not support legal termination "for cause" as defined under the Employment Agreement.

(2) the valuation of Mr. Keller's shares in TPG should be calculated pursuant to Section 5(a)(i)-(vii) of the Shareholders' Agreement, and Mr. Keller should receive the compensation that he is entitled to under section 4(b) of the Employment Agreement.

82.     WHEREFORE, Mr. Keller respectfully requests that the Court declare his existing rights under the Employment Agreement and Stockholders' Agreement, including an award of attorneys' fees and costs incurred in this action.

## COUNT II – APPOINTMENT OF CUSTODIAN (DEFALCO) - *Pennsylvania Law*

83.     Mr. Keller reincorporates and realleges paragraphs 1 - 78 as if fully set forth herein.

84.     15 PA Cons. Stat. § 1767 provides for the appointment of a custodian wherein, "in the case of a closely held corporation, the directors or those in control of the corporation have acted illegally, oppressively or fraudulently toward one or more holders or owners of 5% or more of the outstanding shares of any class of the corporation in their capacities as shareholders . . ."

85.     Mr. Keller owns more than 5% of TPG.

86.     DeFalco has acted illegally, oppressively and fraudulently towards Mr.

16

Keller by refusing to provide Mr. Keller access to information regarding hiring and firing decisions, corporate strategy decisions, and decisions regarding litigation defense, engaging in self-dealing, converting corporate assets for her personal benefit and profit, paying herself excessive compensation, which was without formal corporate consideration or approval, freezing Mr. Keller out of TPG, and wrongly terminating Mr. Keller from employment at TPG.

87.     As such, the Court should appoint a custodian to operate TPG while this lawsuit is pending or otherwise resolved.

### COUNT III - BREACH OF FIDUCIARY DUTY TO MINORITY SHAREHOLDER/MINORITY SHAREHOLDER OPPRESSION (DEFALCO) -*Pennsylvania Law*

88.     Mr. Keller reincorporates and realleges paragraphs 1 - 78 as if fully set forth herein.

89.     DeFalco, as majority shareholder of TGP, owes a fiduciary or quasi-fiduciary duty to Mr. Keller, as a minority shareholder that prevents DeFalco from using majority power to exclude Mr. Keller from his proper share of the benefits of the corporation.

90.     DeFalco breached her fiduciary duty to Mr. Keller as a minority shareholder by refusing to provide Mr. Keller access to information regarding hiring and firing decisions, corporate strategy decisions, and decisions regarding litigation defense, engaging in self-dealing, converting corporate assets for her personal

benefit and profit, paying DeFalco excessive compensation, freezing Mr. Keller out of TPG, and wrongly terminating Mr. Keller from employment at TPG.

91.    DeFalco exploited her majority shareholder position to oppress Mr. Keller, freeze him out of TPG, wrongly terminate him, and attempt to force him to sell his shares in TPG for an artificially low amount.

92.    Mr. Keller was damaged as a direct result of DeFalco's breach of fiduciary duty to Mr. Keller, entitling Mr. Keller to reasonably anticipated benefits, including, but not limited to, lost salary, payment of pro-rata percentage of $500,000.00 payout to DeFalco, damage to Mr. Keller's reputation, purchase of Mr. Keller's TPG shares for full valuation, accounting of all additional payments to DeFalco, access to corporate books and records, and corporate dissolution.

93.    WHEREFORE, Mr. Keller respectfully requests judgment in his favor, and against DeFalco, including all compensatory damages, attorneys' fees and costs, and any other damages allowable at law.

### COUNT IV - BREACH OF CORPORATE BYLAWS (DEFALCO) - *Pennsylvania Law*

94.    Mr. Keller reincorporates and realleges paragraphs 1 - 78 as if fully set forth herein.

95.    TPG's Bylaws operate as a de-facto contract between TPG and its shareholders, governing both TPG's operational policies and its relationship with shareholders.

96.    DeFalco materially breached and/or violated the Bylaws by failing to fulfill the protocols that were required for corporate action to be taken.

97.    Specifically DeFalco performed the following actions without consideration or approval by the Board or other Officers:

(1) placing TPG in significant debt, including unilaterally approving over 1.5 million in PPP loans, and other additional loan debt secured in 2020 through First National Bank of Omaha and personally underwritten by DeFalco and Mr. Keller;

(2) recruiting and hiring new c-level employees without consideration or approval by the Board or other Officers;

(3) making risky investments in third-party relationships and contracts that require long-term commitments of millions of dollars;

(4) re-organizing TPG's Executive Operating Committee multiple times in 2020;

(5) opening a new office in Huntsville, Alabama, which will incur considerable capital expenditures while TPG has material office overhead and capacity in three cities;

(6) recruiting and establishing an Advisory Board to TPG;

(7) engaging in other acts of self-dealing for personal gain.

98.    These breaches materially harmed Mr. Keller's share value in TPG, and his minority interests in TPG.

99.    WHEREFORE, Mr. Keller respectfully requests judgment in his favor, and against TPG, including all compensatory damages, attorneys' fees and costs, and any other damages allowable at law.

## COUNT V – BREACH OF STOCKHOLDERS' AGREEMENT (TPG AND DEFALCO) – *Pennsylvania Law*

100.    Mr. Keller reincorporates and realleges paragraphs 1 - 78 as if fully set forth herein.

101.    TPG, through DeFalco, attempted to terminate Mr. Keller's employment under the Employment Agreement.

102.    TPG did not possess grounds to terminate Mr. Keller "for cause" as defined in the Employment Agreement.

103.    The Stockholders' Agreement specifies that if Mr. Keller is not terminated "for cause," the valuation of his shares in TPG must be calculated pursuant to Section 5(a)(i)-(vii).

104.    TPG and DeFalco provided Mr. Keller notice that they are exercising their option to repurchase his shares of TPG.

105.    TPG and DeFalco have refused to properly calculation the value of Mr. Keller's shares pursuant to Section 5(a)(i)-(vii), and have instead proscribed a false valuation pursuant to inapplicable Section 5(a)(viii).

106.   TPG and DeFalco have an implied duty to exercise good faith in proscribing the applicable valuation to Mr. Keller's shares.

107.   TPG and DeFalco have materially breached the Stockholders' Agreement by forcing a repurchase of Mr. Keller's shares in TPG and failing to comply with the applicable valuation methods in a bad faith attempt to diminish the rightful value of Mr. Keller's shares.

108.   TPG and DeFalco have materially breached the Stockholders' Agreement by alleging a bad faith basis for valuing Mr. Keller's shares under Section 5(a)(viii) instead of Section 5(a)(i)-(vii).

109.   Mr. Keller has been harmed by TPG and DeFalco's breach of the Stockholders' Agreement and the value of his shares in TPG have been significantly diminished by the false valuation.

110.   WHEREFORE, Mr. Keller respectfully requests judgment in his favor, and against TPG and DeFalco, including all monetary amounts owed to him under the Stockholder's Agreement, compensatory damages, attorneys' fees and costs, any other damages allowable at law.

## COUNT VI - BREACH OF EMPLOYMENT AGREEMENT (TPG) - *Georgia Law*

111.   Mr. Keller reincorporates and realleges paragraphs 1 - 78 as if fully set forth herein.

112.   TPG, through DeFalco, attempted to terminate Mr. Keller's employment under the Employment Agreement for cause.

113.   Section 4(d) of the Employment Agreement defines a termination for "cause" as follows: "(i) breach of any material term contained in paragraphs 3 or 5 of this Agreement; (ii) conviction of a felony other than for Driving While Intoxicated; or (iii) failure to seek, and be successfully treated for, substance abuse and/or addiction."

114.   None of the circumstances described in Section 4(d) the Employment Agreement existed, or have ever existed, in regards to Mr. Keller.

115.   Therefore, TPG could not terminate Mr. Keller's employment "for cause."

116.   TPG, through DeFalco, materially breached the Employment Agreement by wrongly terminating Mr. Keller's employment "for cause," therefore depriving him of his employment and the relief owed to him under Section 4(b) of the Employment Agreement.

117.   By falsely terminating Mr. Keller "for cause," TPG also deprived Mr. Keller of the full, fair value of his repurchasable shares in TPG.

118.   Mr. Keller has been damaged by the aforementioned material breaches of the Employment Agreement.

119.   WHEREFORE,  Mr. Keller respectfully requests judgment in his favor, and against TPG, including all monetary amounts owed to him under the Employment Agreement, compensatory damages, attorneys' fees and costs, any other damages allowable at law or under the Employment Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for judgment in their favor against Defendants:

A.   That a declaratory judgment be entered that:

(1)   the facts existing at the time of Mr. Keller's termination do not support legal termination "for cause" as defined under the Employment Agreement.

(2)   the valuation of Mr. Keller's shares in TPG should be calculated pursuant to Section 5(a)(i)-(vii) of the Stockholders' Agreement, and Mr. Keller should be receive the compensation that he is entitled to under section 4(b) of the Employment Agreement.

B.   That the Court should appoint a custodian to operate TPG while this lawsuit is pending or otherwise resolved.

C.   That DeFalco breached her fiduciary duty to Mr. Keller as a minority shareholder, entitling Mr. Keller to reasonably anticipated benefits, including, but not limited to, lost salary, payment of pro-rata percentage of $500,000.00 payout to

DeFalco, damage to Mr. Keller's reputation, purchase of Mr. Keller's TPG shares for full valuation, accounting of all additional payments to DeFalco, access to corporate books and records, and corporate dissolution.

D.     That DeFalco breached the Bylaws, entitling Mr. Keller to compensatory damages, attorneys' fees and costs, any other damages allowable at law.

E.     That TPG breached the Stockholders' Agreement, entitling Mr. Keller to compensatory damages, attorneys' fees and costs, any other damages allowable at law.

F.     That TPG breached the Employment Agreement, entitling Mr. Keller to compensatory damages, attorneys' fees and costs, any other damages allowable at law.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Keller demands a jury in this action on all issues so triable.

This 23rd day of February, 2021.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

*/s/ Paul Punzone*
Jake Evans
Florida Bar No. 0103023

Paul J. Punzone
Florida Bar No. 1003511
**HOLLAND & KNIGHT LLP**
100 North Tampa Street, Suite 4100
Tampa, Florida 33602

*Attorneys for Plaintiff Scott Keller*